case, 18431, United States v. Davis. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. In order to render section 924C3B unconstitutional, Respondents need to show that the only plausible construction is one in which a defendant's guilt or innocence hinges on a judge's imagination about how an ordinary defendant might act, rather than a jury's finding about how a particular defendant acted. That's a very unusual way to draw a line between criminal and noncriminal conduct in the context of a jury trial, and I don't think lower courts would readily have accepted it if section 924C were the only or the first context to present a choice between a categorical approach and a circumstance-specific one. The operative language of the statute Mr. Fagan, what do you think Congress intended in 1986? I think Congress in 1986 probably didn't focus on this question. I understand it didn't. But I think if Congress had thought about it. No, I didn't ask had, because that's rewriting their intent. Given the circumstances in 1986 that 16b had been read in the categorical approach, that they adopted it for the Bail Reform Act, and you're not challenging that that's a categorical approach, that for decades you have been saying that 16b is better read as the categorical approach, what do you think Congress intended in 1986? A couple of points, Your Honor. Without reference to our later holding. A couple of points, Your Honor. First of all, we don't agree about the Bail Reform Act necessarily, but and I also this was not the ordinary case categorical approach or any categorical approach was not well established in 1986. They've identified a single decision that was a per curiam decision of the Second Circuit that had applied a form of categorical approach to hold that drug trafficking crimes were not covered by the then existing version of 924C. Congress clearly repudiated that when it added the definition of drug trafficking crimes. Sotomayor, you thought for a very long time that the language was best read as applying the categorical approach. Well, Your Honor, so as far as the government's role in this, after a few fits and starts, there were briefs we filed that urged a circumstance-specific approach. And I'd also note the Sentencing Commission read the language in a circumstance-specific way from 1987 to 1989. After a few fits and starts, we settled into the categorical approach because that's where courts seemed to be going, particularly after the ACCA's residual clause and the rest of the Armed Career Criminal Act were enacted, and because it appeared to be workable, it appeared to be constitutional. Now, I know you didn't want me to reference this Court's decisions, but after DeMuy and Johnson, it's clear that it is neither workable nor constitutional. So we've gone back and taken a fresh look. And I think if you take a fresh look at the statute, you'll see that it's better read, or at least reasonably read, as the canon of constitutional avoidance would demand, to have a circumstance-specific approach. The operative was not adjudicated on a circumstance-specific approach, right? That's correct, Your Honor. So there was you would have to have at least a redoing of the trial. Well, Your Honor, we think that the error could be found harmless, but we would be, if the Court doesn't agree with us on that, it could send it back to the court of appeals, and possibly there could be a retrial. But if you look at the operative language of the statute here, it clearly uses the term crime of violence in a context-specific way. It prohibits a defendant from using or carrying a firearm during or in relation to a crime of violence. And I think the subsection-specific definition of crime of violence in Section 924C3 is best understood, and certainly reasonably understood, to have that same circumstance-specific meaning. That's a very logical thing for Congress to have wanted to do, because it captures precisely the set of defendants who are committing crimes in violent ways. Well, if we accepted your theory, you say it would have to be a jury finding. And what would the jury have to find with respect to the predicate offense? Would they take account that there was use of firearms, or you'd skip the use of firearms and just look at the predicate offense without the firearms? So the use of firearm could be a factor, but it couldn't be the only factor that renders a crime violent. I think that is one of the things that the phrase, by its nature, does in this statute. So, for example, if you had a crime where a defendant simply had a gun in his jacket while he was in the front of a store doing some criminal business, if the criminal business were that he was selling cocaine, that would be a crime of violence – sorry, it wouldn't be a crime of violence. It would be a 924C violation, because he has the gun, he's carrying it in furtherance of a drug trafficking crime. If all he's doing in the front of the store is selling counterfeit handbags in a perfectly nonviolent way, that would not be a 924C violation. This kind of inquiry, I think, is the kind of inquiry that the Court made clear in both DeMaia and Johnson is the kind of thing that juries can figure out. Juries are well acquainted with figuring out degrees of risk, looking at courses of conduct. And, of course, in the context of 924C, the jury is already finding the underlying offense conduct that is at issue. So it – what the categorical approach would do here is get away from the whole idea of sending things to juries and would substitute a judge's categorical judgment about the ordinary case of the crime for the facts that the jury has right in front of it to which it can easily apply a readily applicable standard of the sort that the Anglo-American system has entrusted to juries for centuries. Mr. Fagan, looking at the language of C-3, the word offense is in a prefatory clause before A and B. And as I understand the government's position, A, we will continue to read offense to mean the offense charged on the books and look at the elements. But with respect to B, you'd like us to look at the facts and treat the word offense there to mean what did the defendant actually do. We don't normally read prefatory language to mean two different things in two clauses that follow. And, in fact, the government earlier this year in – I don't know how to pronounce it – Cochise, I think it is, argued precisely this point, that normally the single word is given a single construction at least throughout the same paragraph. So what do we do about that problem? Mr. Fagan, I think we are giving it a single construction, and let me explain why. First of all, the term offense has always been understood, particularly if you look at this Court's double jeopardy jurisprudence, which interprets the term offense as the framers used it, to mean transgression of a law. And that encompasses both the acts that the defendant committed and the elements of the statute that the defendant violated. It means both those things at the same time. You look at both of those things to see whether there's been a double jeopardy violation. In more recent times, this Court has understood offense to work exactly the way we're urging here in its decisions in Nijihawan, Kawashima, and Hayes. I think Hayes is particularly instructive. If you look at the statute the Court construed there, it was even more of a difficult linguistic lift than this one for two reasons that I'll get to in a second. But if I can paraphrase that statute only slightly for the Court, the Court there was interpreting misdemeanor – If we could just return to this language. As I understand it, in A, you would have us read offense to mean the offense of – that's charged on the books. But when we get to B, you'd have us look at the facts actually committed. Is that right? Can we agree on that much? Yes, Your Honor, but if I could qualify that. No, but you can qualify in a minute. Okay. We can agree on that much. Well, let me just make one – No, we can't agree on that much. I would just make one thing clear. I think both of these do hinge on the jury findings. It's just in the first case, the jury findings necessarily incorporate an element that has a use of force. So in that case, the jury is still finding use of force, and the jury is finding something in both cases. I guess I'm not tracking you at all. As I understand it, A, we would look at the offense on the books. Does the offense have an element of force?  A, you're asking us to do this classic categorical approach analysis, and in B, you're asking us to skew that same analysis and look at what actually happened. And again, I'd just like you to address that and not run too far afield to other cases or other statutes, but maybe just focus on this one and explain to me how we might give that same word to different constructions. Well, Your Honor, I guess my answer to you is that I don't think we are giving that same word to different constructions. And the reason I was going to other cases and other examples is to show how the term has been understood to work both ways. Help me where I am, okay? I'm on this statute, all right? So let me – so offense means a transgression of a law. And A, a transgression of a law has multiple components to it. One is the set of acts that the defendant committed, and another is the legal prohibition that the defendant violated. The Court has – with apologies, Your Honor, the Court has said that in the double jeopardy context, and it said that it's not that same approach in Hague. Well, in double jeopardy, in Blockburger – and I'll let you go in a second, I promise. I know you want to run off to some other stuff. That's fine. But in Blockburger, we look at the elements of the claim on the books. And so when you keep saying double jeopardy, I say, well, that's what you want us to do in A, but not what you want us to do in B. Well – So I'm not sure that helps me. That's why I'm asking you to focus on this statute. So, Your Honor, Blockburger is only one part of the double jeopardy test. Obviously, if a defendant commits two different murders, you would look to the specific acts that he – the specific act that he committed each time. But the way in which we're – But we're not talking about that here. There are not two different crimes being charged, right? So if we talk about – It's the same crime. If we talk about a transgression of a law, I think it's perfectly natural to talk about both the elements and the particular way in which it was committed. So let me just try this in a sentence. I don't think anyone would look askew if someone were to say that a youthful crime – a youthful gun crime is defined as an offense that has as an element the use of a gun and is committed by someone under the age of 21. In that sentence, we'd understand offense to encompass both the elements of the statutory prohibition and the manner in which the offense was committed, which is, again, exactly how this Court interpreted the phrase, offense that is a misdemeanor in the context of Hays. Off you go. Go ahead. Your Honor, I'm happy to take further questions if I haven't satisfied you. Well, Mr. Feigin, can I ask you some further questions about the language of the statute? And I guess I want to do it by comparing it to this bill that's currently pending in Congress, which is meant to change this provision in order to make it fact-specific. And so this bill, rather than saying an offense that by its nature involves a substantial risk that physical force may be used, instead says an offense that by – excuse me – an offense that based on the facts underlying the offense. So they substitute by its nature for based on the facts underlying the offense. And then they change the tense, and they say involved a substantial risk that force may have been used, right? So by its nature versus based on the facts, and changing the tense to make it clear that what we're looking at is something that has occurred and that we're able actually to make a fact-specific determination about it. Now, that's the way you would write a provision of the kind that you want. This is not the way you would write a provision of the kind that you want. But by its nature, clearly, it's like what is this offense ordinarily about? And then the use of the present tense is inconsistent with this notion that the jury in this case is having to look back to determine the particular facts of a particular crime. Well, Your Honor, just as a prefatory matter, the first thing I'd say is if that language is clear to you, I think that's another answer to Justice Gorsuch's question, because even that clarifying construction that Congress might be considering also uses offense to have an elements clause portion. In that particular portion, which it tries to solve, yes. Now, to your role, so I just point out that that is another place in which everyone agrees that offense could be used in both ways. Yeah. You're not answering Justice Gorsuch's question anymore, Mr. Fagan. Fair enough, Your Honor. To go to your question, I think that language is clearer. I think there are a couple of issues with that language as well. First of all, I wouldn't put any weight on the change in tenses, because, of course, Section 924C, like other crimes that are defined in Title 18, speaks in the present tense. It talks about a defendant who uses or carries a firearm, and the switch to the past tense is something kind of odd. Again, this is the language Congress constructed because it's worried about this Court potentially construing the language in a manner that would render it constitutionally invalid. So it's — I don't think it's a fair representation of what Congress might have thought in 1986. Also, with reference to the term by its nature, I do think the term by its nature can be used and was used in Section 924C3b in a circumstance-specific way. If I were to tell someone, don't bring your gun to a situation that by its nature is violent, I think that would be understood as having the kind of limiting feature that by its nature has in the current version of Section 924C3b. Kagan. Well, that's because you prefaced it with the word situation. You know, you can preface it with the word facts, but this is not prefaced with that word. As Justice Gorsuch said, it's prefaced with the word offense, which we know from Section A is something about the statutory context. And then it's, you know, the crime that by its nature, the offense that by its nature. I mean, tell me how that's fact-specific. Well, Your Honor, I would — Burglary by its nature. I guess I would say — Robbery by its nature. Burglary by its nature. So let me start with by its nature, and then I would like to get back to offense. So by its nature in this statute, as a circumstance-specific — on a circumstance-specific reading, serves some limiting functions. First of all, it focuses on the offense conduct rather than the offender. You know, Tony Soprano is prone to fly into murderous rages at the drop of a hat, but that doesn't make that every crime that Tony Soprano commits a crime of violence. Mr. Feigin, what does murder by its nature mean? How would you say to somebody — what does that phrase mean, murder by its nature? Well, Your Honor, then I would want to know whether you were talking about murder in the abstract or a particular murder. But I'm just repeating the language of the statute with a particular offense. Robbery by its nature. Well, Your Honor, that's not how we interpret offense here. We interpret offense to mean the offense conduct of a particular defendant. Whether that conduct by its nature — Well, that goes back to Justice Gorsuch's example, because you clearly can't mean it that way, because then Section A would be incoherent. Your Honor, that's exactly the interpretation the Court gave in Hayes. If I could just explain that for a second. The Court there was faced with a statute that had misdemeanor crime of domestic violence. It was defined, and I'm paraphrasing only slightly here, as an offense that is a misdemeanor that has as an element the use of force committed by a domestic companion. The Court interpreted the has as an element part, even though offense is a misdemeanor applied to the whole thing. The Court interpreted the has as an element part to have a categorical approach and the committed by part to have a circumstance-specific approach. So I don't think the words, offense that is a felony, can be the words that are doing the work here. But, Mr. Feigin, you're pointing to a statute where there was something else in addition to the language that's in this provision. And that's what was true in Nijuan and it was true in Hayes, and what the Court pointed to was the something else in addition, the committed by specified persons or the fraud involving over $10,000, and saying that that peculiar, you know, that that particular language made it clear that somebody had to look to what had actually happened, but there's no such language in this statute. Feigin, Well, Your Honor, if you're with me, if that is the question you're now raising, then we've gotten past offense that is a felony. Then we're all agreed that offense that is a felony could have a categorical approach and a circumstance-specific approach. Sotomayor, Well, it could if there's other language that suggests that. Feigin, And then we're just on the question of whether section 924C3b, read in light of the canon of constitutional avoidance, can reasonably be read to invoke a circumstance-specific approach. And I think by its nature there does both what I said about the offense offender and also captures the idea of essentially the word otherwise. As this Court said in Rosemond, what this statute is going after is it's trying to prevent a defendant from, quote, upping the ante by bringing a firearm to a situation that would otherwise present risks. It can't just be, yeah, I'm sorry. Alito, Mr. Feigin, if I could finish your sentence, please. I'm just a little concerned I would be able to squeeze in some question during your presentation, but go ahead. Feigin, I'm sorry, Justice Alito. As I was saying earlier, it can't just be that the firearm itself creates the risk. It's bringing the gun to a situation that already has it. Without by its nature, I don't think that would be as clear. I'm sorry, Justice Alito. Alito, No, no, no. So I'm interested in the practical implications of our decision in this case. How many contemporaneous crime statutes would be put in jeopardy if we affirm here? Well, Your Honor, very few of them have their own subsection-specific definition of crime of violence. So I think the Court's decision here is going to certainly, would certainly, if the Court held that the ordinary case categorical approach applies, would certainly invalidate Section 924C3B. It would also call into question the Bail Reform Act. But I think if the Court did that, there would be a couple of other very important consequences. For one, if the Court does so based on respondents' argument that juries can't possibly figure this kind of thing out because it's too complicated for them, it would call into question a host of other federal and state statutes that call into question matters of degree. Second, we know from Johnson exactly what the fallout of invalidating a provision like this is going to be. And we're going to have the hundreds and thousands of very violent offenders, some of the worst offenders in the criminal system, federal criminal system, challenging their, if they're still in direct review, challenging their convictions, or challenging their current prison terms. The other thing it's going to do is increase the amount of litigation under Section 924C3A because it will call into question whether some very violent crimes that Congress would undeniably, I think, have wanted to include as Section 924C predicates actually can serve as Section 924C predicates. Roberts. The government in all of these cases keeps upping the ante, even though they continue to lose hands. I mean, these prior cases, well, if you rule this way, all these other ones are going to fall. And then we do read that rule that way, and then you've got to come back and you've already given up all those other ones, case after case. I would have thought you'd be more interested in saying that there are plausible distinctions in these other cases so that you don't automatically, you know, stack the odds against you when that next case comes up. Well, Your Honor, the only federal statute I think we would see next, if it came up, is the Bail Reform Act. We might have some discussion of that. But I think the main concern we have here is going to be the practical concern that I was just mentioning with all the defendants who are going to seek release. And these are – I don't want to be dramatic about it, but these are violent offenders. This is a case that is of tremendous importance to the entire U.S. attorney community and the Department of Justice. On that one, what do you say to your friend's argument on the other side that while resentencing may be required for a large number of persons, the likelihood of significant changes in prison sentences is low, given that this is usually thrown in as an additional charge, one among many, stacked on top of others? Well, I don't think that's correct, Your Honor. So, for example, although a court is entitled to consider the fact that there's going to be 924c3 sentence added on to a defendant's sentence, courts will lower sentences if the 924c3 – sorry, excuse me, the 924c conviction is vacated. We didn't see in the ACCA context every defendant get the maximum non-ACCA sentence, and some of them were released. But just to be clear, do we have any – we have this very impressionistic argument. You tell us it's the end of the world, it's near, or maybe now after the Chief Justice, it's not quite so close as we thought. And then are your friends going to argue, well, it's not going to really change much at all? But we don't seem to have a lot more than these very rhetorical arguments. We don't have a lot of empirics before us on this. Well, fortunately, Your Honor, this – we haven't faced this amount of collateral litigation yet, because most of those cases are on hold. But I can tell you that numerous defendants and numerous Federal prisoners are filing for relief, and we do expect that quite a few of them, notwithstanding, are urging of courts to impose the same sentence if they can, which won't be possible in every case, but if they can, to impose the same sentence, we do think some of them will be let out. This is also going to increase litigation in the lower courts under the categorical approach under section 924C3A if the Court rules against us in this case. So I'm not – I thought one of your – excuse me – one of your points was that this was going to significantly lower the sentences of many violent criminals. So there are going to be cases in which we can't – that is – there are going to be cases we cannot get under 924C3A. And for those defendants, their 924C convictions are going to be wiped out, and they're going to get lower – probably lower sentences. And I think the length of sentences is one of the concerns you have to confront squarely here when dealing with 924C. And so your response to that and what Congress was thinking about in 1986 with respect to why they wanted – why Congress wanted long sentences for these kind of violent crimes? Well, I think it is crystal clear in the legislative history that Congress wanted additional – and frankly, in the text of the statute, that Congress wanted additional terms on top of the sentences that the defendants would receive for any underlying crime of violence that was also charged for the 924C offense. And I think what Respondent's approach here would do is essentially eradicate that judgment, whereas adopting our approach, the only defendants who are going to eradicate that judgment as to anyone who would have fallen under 924C3B – and I don't think that's the right approach to take when 924C3B can at least plausibly be read to have a circumstance-specific approach – whereas under a circumstance-specific approach, the only defendants who are going to be able to obtain relief are the ones who actually committed their crimes nonviolently. I think that is exactly the result that Congress would have wanted had it understood, as the canon of constitutional avoidance presumes, that its choice of an ordinary case-categorical approach, had it even imagined one in 1986, would be held unconstitutional. If I could reserve the balance – I'm sorry, Justice Sotomayor. No, no, they're good. If I could reserve the balance of my time. Thank you, counsel. Mr. Beck. Mr. Chief Justice, and may it please the Court. Your Honors, this case is about following the text of a statute where it leads, and when necessary, requiring Congress to speak more clearly on what is prohibited. And there are three reasons why the 924C residual clause should suffer the same fate as Section 16B. First, they contain the same language that gives rise to an ordinary case-categorical approach. Second, they share a common history, suggesting similar treatment under the law. And third, a conduct-based approach lies beyond the reach of constitutional avoidance. Before I move to my first point – Those cases were concerned about the jury, protecting the right of the jury to find the facts. That concern, which undergirded all of those cases, that Sixth Amendment concern, as well as the practical concern of trying to relitigate what had happened many years ago, that is totally absent in this case, right? Your Honor, the constitutional concern is absent in this case. Of course, there may be – And you agree with me that that concern undergirded Taylor, it undergirded Johnson, it undergirded DeMaia. I disagree with you that that played a central role in the decision in Taylor v. United States. Your Honor, the best evidence – It's specifically identified in Taylor as a concern on page 601 of the opinion. Yes – Where the Court talks about abridging the right to a jury trial. And, Your Honor, my reading of that portion of Taylor is it's raising a question of judicial economy. It's within the paragraph dealing with practical and workability concerns. Right. And it's simply raising the question, are we now going to be faced with the problem of every defendant appealing, saying they were denied a jury trial? And I raise this because I think the prior cases interpreted language in a way to avoid a constitutional problem, namely the Sixth Amendment problem, when you're focusing on prior convictions. But that reason to stretch the language in one direction is not present here, as I see it. This is – the jury was all – all those cases were about the jury, and the jury would be able to find the facts here. And, Your Honor, I want to be able to answer your question clearly. In Taylor, when this Court first raised the question of whether to apply a categorical approach or conduct-based approach, the very first statement was we were persuaded by all of the circuits below that reached a categorical approach. In not one of those cases is there a mention of a constitutional concern or the application of constitutional avoidance. The conclusion in Taylor was there's only one plausible – Sotomayor, why don't you list them? You talk about them generically. So what are the other interests that you think the categorical approach endorsed? Your Honor, Taylor began with the text, then went to the history, and then noted practical and workability concerns. But Leocal v. Ashcroft in 2004 didn't discuss practical or constitutional concerns at all. It relied solely on the text when construing section – section 16 in reaching the singular conclusion that that language, offense plus by its nature with the absence of conduct-specific language, requires a categorical approach. Well, let me ask this question about the text. Let's say that a statutory provision comes before us, and it's possible to read the language of this provision in two different ways, and one may argue about which is more – which is more strongly supported by ordinary textual analysis disregarding any practical consequences. But we know that one reading is entirely workable, and the other one is absolutely unworkable. And would we presume that – would we not think that Congress is likely to have chosen the interpretation – likely to have meant the interpretation that is workable as opposed to the one that is absolutely unworkable? In Your Honor, I'm – I'm aware of the presumption of constitutionality, but I'm not sure that the – I'm not talking about the presumption of constitutionality. I'm talking about the – the presumption of rationality. I think that's relevant when construing a statute. I would agree with you on that. The question here ultimately – So if the language can be read in the workable way as opposed to the way that's completely unworkable, we would choose the way that's workable. We would think that's what Congress meant, not something that was – that was dead on arrival. Your Honor, we – we must begin with the text when trying to determine what Congress meant. Workability has to be a secondary or tertiary consideration. Here, the government has proposed a new reading, a conduct-based approach that cannot be reached by constitutional avoidance simply because it's not a plausible reading. Well, let me ask you this textual question, then, and look – this is looking at subsection capital B. When – under your understanding of the categorical approach, when the court is determining whether an offense by its nature involves the requisite risk, is it not asking, do the elements in themselves involve that risk? It doesn't – isn't that what it boils down to? I disagree under this language, Your Honor. So what would the – what does the court look to besides the elements to determine what is the – the typical case? Well, as this language been – has been construed, this court would imagine the crime's imagined ordinary case. And we get there from this Court's opinion in James v. United States, noting the dual, inherently probabilistic language that's present here. Yeah, okay. Let's take – let's take burglary, the classical definition, unlawful entry of a dwelling with the intent to commit a felony. So now I want to think of the – the ordinary case of burglary, and that's what I think of. What do I think of beyond that? You think of how burglary is often or ordinarily or typically committed, and you then ask the question, is what is the risk associated with that? Now, that's if it's constitutional. Okay. So what – what is typically done in a burglary beyond the elements of burglary? The problem with this is we can't answer that question. Justice Scalia explained, for example, with possession of a short-barreled shotgun in Johnson, as many times as we try, even with these common offenses, ultimately it becomes an impossible question. Why is it impossible? I understand that, but if I could just – I'm sorry, Justice Breyer, go ahead, please. If – if you can't tell me what beyond the elements of burglary one would take into account under B in determining the typical burglary, I think that what we're talking about there under your categorical approach is the risk that's inherent in the elements of burglary. And if that's the case, why is there no reference to elements in B when there is a reference to elements in – in A? Doesn't that tell you we want to look at something other than merely the elements of the offense? I would agree, Your Honor, but not conduct. Here – and this kind of goes back to Justice Gorsuch's question to the government. How do we construe this when the word offense is the subject phrase for both subsection A and subsection B? This Court answered that question in Clark v. Martinez, that words cannot be treated as a chameleon, meaning one thing for one purpose and another for another subsection. Breyer, I understand that. I have a different question, which perhaps is puzzling only me. But both you and the government assume that without this case-specific interpretation, the statute would be unconstitutional. Why? Now, I – but let me tell you why not, and then you tell me why I'm wrong. What we had in Johnson was a statute that said, in defining the relevant crime, burglary, which is sometimes violence, arson, probably a lot of violence, extortion, hardly ever violent, explosives, often violent, or otherwise involves conduct that presents a serious risk, potential risk of physical injury. And it's that last phrase that the Court sort of, with Justice Scalia's writings, threw up their hands. In that context, and both Judge Posner, in a lower court opinion, and I think I've said the same thing, there's no problem here. Let the government go look at the pre-sentence reports and let them discover how often these crimes do involve violence and then categorize. Now, that's very tough to do with the Johnson case, because with the Johnson case, you're talking about State crimes that are phrased in 4,000 different ways. But it's sure not tough to do here. This is a Federal crime-based statute. The government has all the pre-sentence reports it wants, and it could go through and categorize which are violent and which crimes are not. And if that's so, I don't see why it couldn't, if that's so, this would not be a difficult statute to interpret. It would not be very ambiguous, and therefore, you win, but you lose, because, in fact, it isn't unconstitutional. Now, if I think that, which I do, is there, is there some absolute, you know, is there some killing argument against it, which there may well be, which should tell me I'm really either alone or out of my mind or et cetera? You understand? I understand, Your Honor. One of the reasons we have the Void for Vagueness Doctrine is to support the separation of powers by not delegating to judges and prosecutors the authority to define the contours of a criminal statute, particularly a criminal statute that takes sentencing discretion away from judges and imposes harsh, mandatory minimums, in this case, 25 years. But I want to tell you. Keep going. I want to tell you why this is like Johnson. And, of course, we shouldn't forget about Sessions v. DiMaia, which looked at the same language. The same two features in Johnson that conspired to render the residual clause void for vagueness are also present here. First, a lack of guidance on how to imagine the crime's ordinary case, coupled with an indeterminate risk threshold. And stare decisis finds its greatest strength in questions of statutory interpretation of the risk threshold. Breyer. Let me just follow up for a second, because the words are substantial risk, okay? Substantial risk of physical force. So what the Court writes, I'm not saying we should, is in Clause A, it is an offense, it is a felony, has an element, the use, attempted use, or threatened use to physical force, right? So we get the pre-sentence reports. And we see what the average risk of those crimes is in terms of physical force. And then we say B means the same. Those crimes that have the same risk of physical force in respect to B as the crimes in respect to A are what this language is referring to. That would be clear. Nobody's tried that. I've suggested it. So what do I do? I guess you would like me just to say the government's conceded it's unconstitutional. That's the end of it. Well, and to address your proposed solution, Your Honor, at that point we'd be delegating to United States probation the authority to define this. Well, we're looking at who writes the pre-sentence reports? U.S. probation. They write the pre-sentence reports according to the facts. And anybody who wants a trial as to any fact in respect to a pre-sentence report and have a jury define it or the judge, if it's inappropriate, can do it. And then we run into the same problem in Johnson and DiMaio. What statistics do we use? What other sources do we use? And this Court has never been able to answer that question, and I think appropriately, because it's an unanswerable question. But in Johnson, we said we distinguished cases about prior convictions where you're looking at risk from this case and said, more importantly, almost all the cited laws require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion. So that was to say, and then went on to say, as a general matter, we do not doubt the constitutionality of those laws. So why would a law that refers to substantial risk be unconstitutional when the Court in Johnson said that's not an issue? Well, it's certainly not always the case, Your Honor. But it's usually the case. The Court said, do not doubt the constitutionality of all those laws. Oh, no. I would agree with you that most of the time, a jury is capable of making a risk assessment. The question here is not whether the jury is capable of doing, but if that's what Congress intended. Right. I take your point on that. On your vagueness point, vagueness is born in a conception of fair notice. You would agree with that. A combination of fair notice and the support of separation of powers, Your Honor. And hasn't Congress, in 1986, was concerned about the enormous problem of gun violence, violent crimes committed with guns, which was bad as it is now, extremely bad, worse, much worse in the 1980s. No question. And put everyone on notice, on notice, fair notice. If you commit a crime with a gun, you were going away for a long time. That was Congress's obvious intent, overwhelming intent, because of the problem. And the idea that, I mean, I guess I'm not seeing the notice problem, given that that has been crystal clear since 1986 for everyone in this country. Well, if that's what the statute said, I would certainly agree with you, Your Honor. But if we look to how Congress was thinking about these things when it passed the Section 16, as well as the first definition of crime of violence here, Congress was thinking about the predicate offenses categorically, as categories of traditionally violent crimes. Well, on the question of what Congress was thinking, maybe we could just take a glimpse at what actually happened in this case, which is that the defendant conspired to commit and then committed a series of robberies of convenience stores, where they put a sawed-off shotgun to the head of a clerk and then robbed cigarettes. Now, you really think Congress would say, well, that's not really a crime of violence? The defendants in this case are guilty of every offense you just described, and we're not challenging any of those convictions. The difference here today, if we were to win and remove one of the six counts that they were convicted under, is that either they would die in prison or be released as very old men. But that's not my question. If Congress had in mind this kind of crime, do you think Congress would say, no, that's not a crime of violence? As to the robbery, certainly I would agree with you. As to the conspiracy.  They would say that's not a crime of violence. Congress has not spoken clearly on that question. Not with the language it chose. Do you have any doubt what they would say? I certainly do have doubt about whether Congress included, intended to include conspiracy when it was thinking about traditionally violent crimes, simply because conspiracy is an inchoate offense. Counsel, looking at what Congress actually wrote in terms of canons of construction, we sometimes consult one we've heard about so far. And talked a little bit about is the canon of constitutional avoidance. This Court will attempt, when possible, sometimes to avoid a construction that renders Congress's work null. Yes. We also have, though, the canon of construction, the rule of lenity, that we don't typically construe statutes to be as grievous as they could possibly be read. And for the notice problems you've talked about in the separation of powers problems, if Congress wants to act more grievously, it needs to speak more clearly before it deprives a person of his liberty. Usually those two canons point in the same direction. This is an unusual case where they point in opposite directions. Have you done any study or examined how historically those two canons, when they compete, are reconciled? It's a difficult question to answer, Your Honor. We know, for example, from Clark v. Martinez, that we resolve all textual canons before reaching avoidance. Dealing with another normative canon, like lenity, it's not clear. I couldn't cite a case, for example. It certainly makes sense that constitutional avoidance Well, before we get to what makes sense, we hear a lot about what makes sense in this room. I'm curious about what the law is. Have you done any examining of historical sources? I don't know. Joseph Story, a pretty good source on commentaries of the Constitution, Blackstone. Something you can point me to in this law about how those two get reconciled. And if the answer is no, that's a perfectly fine answer. I'll go look myself. I just thought you might save me a little time. I'd like to start with no, but I would like to take another attempt at answering your question. The rule of lenity serves multiple purposes. All right, go on to another question. You'll do better work elsewhere. I thought we had said the rule of lenity only kicks in after you've done all the other tools of statutory interpretation, which would include constitutional avoidance. And, Your Honor, that is Oh, we've said that many times. I've read it inconsistently in application there. Certainly, they exist in the same sphere. They're both triggered by concern over ambiguity. They both are used with a plausibility standard. But the reason the government's proposed conduct-based approach is not plausible really comes down to the rule of lenity. But in addition to that, and perhaps more importantly, it's irreconcilable with the plain text of the statute. It conflicts with how this Court has already interpreted identical language, and it offends the separation of powers. Well, can I come back to the question about the meaning of the word offense, which you addressed — I'm sorry, which Mr. Fagan addressed extensively earlier. Does that same problem exist under ACCA? And if it doesn't, are you saying it should — Certainly. It does? The problem exists under ACCA? The problem in the sense of the crime has to mean the same thing for purposes of both subsections because it has the same subject. And that's consistent with our argument. The government, in fact, is trying to change that. So the government, for example — All right. Let me ask it a different way. Do you think that the residual clause in ACCA can be objected to on the same ground that you are using to object to the use of the case-specific approach, the fact-specific approach to the residual clause here? I think so, Your Honor. Absolutely. Could you just explain how that is? Sure. And if I can refer to precedent while doing so, but I'll do it without mentioning Taylor, for example. Well, I prefer if you can do it with the language. If you don't have the language in mind, then I'll just leave it. I have the language. The same problem exists in both. The lack of guidance on imagining the ordinary case of the crime in the indeterminate risk threshold, those are present here as well as there. You also have the dual inherent probabilistic language that gives rise to the ordinary. But what I'm getting at is this — your argument that the provision here under the government's reading interprets the word offense to mean two different things, element at one point and facts at the other. The way ACCA is worded, that problem doesn't arise. It says — it talks about a crime, and then in subsection I, has as an element. Subsection II presents a serious potential risk. So you don't have that problem there, do you? We do have the same problem because what's modifying crime is not presents but involves conduct. So it's a parallel reading here. And of course, if we look to Sessions v. DiMaia, it's the same language. But going back to 19 — So you don't think there's an important distinction in this respect between the language of this provision and the provision of ACCA? Certainly not, Your Honor. And I think the plurality of this Court answered that question in Sessions v. DiMaia just last term. So if I don't think that there is that problem under ACCA, then I shouldn't think there is that problem under this provision? I would agree with that, Your Honor. If we go back to 1984, when Congress created both Section 16 and for the first time narrowed the application of 924C from all felonies to just crimes of violence, they were conjoined with a cross-reference. At that time, even if we didn't know what Section 16 and Section 924C meant, we know Congress intended them to mean the same thing. But they changed it in 86. They changed the cross-reference. They removed the cross-reference. But what they did — Doesn't that defeat your whole point there? It does not, Your Honor, because they used the same language. So the truth is, neither the government nor respondents know exactly why Congress chose to copy and paste the language from Section 16 into 924C. But we know they used the same language. So it makes better sense that they were doing so for convenience, because it was at time that they were also adding a definition of drug trafficking crime. In Rassam v. United States, I believe in 2007, this Court dealt with a similar situation where two provisions used the same language at inception. And the way Congress intended a different meaning there is it changed the language in one but kept the language in the other the same. Yet here we're faced with 30 years of a categorical interpretation from circuit courts. We have three different instances where Congress has changed the language of 924C in that time. And not once has it changed the language that gives rise to this categorical approach. So I think that gives us some insight into congressional intent through this amendment history. Just last term, this Court stated in Jennings v. Rodriguez, quote, Spotting a constitutional issue does not give the Court the authority to rewrite the text of a statute, and the government's proposed conduct-based approach would effectively be asking this Court to do just that. One of the big limitations on the application of constitutional avoidance is the separation of powers. Congress alone is the lawmaking authority, and a conduct-based approach would offend that in the truest sense. Breyer. I suppose you say this is the basic question we're asked is the question of whether it's too vague. That's why I'm in my dilemma. And certainly the conduct-based approach is one effort to escape. All right? That's correct, Your Honor. Well, so what would I do if I think? You see these words here, a substantial risk of physical force against the person? What they mean is the same risk of physical force as in A. And therefore, it isn't vague. Maybe there's some obvious answer to this, but it's annoying at the end. Yeah. You see, if you were to do that, it would be very specific, and it wouldn't really be like Johnson, because Johnson put a lot of weight on the fact that they have three examples, which cut in four examples, cutting in different directions, and they're state crimes. And suppose I just wrote that and said, that hasn't been argued? Here's the difference. What would you do if you were, unless you see some obvious problem? Here's the difference. Subsection A is asking the question, does it have an element of force? Subsection B is asking a different question. What is the risk of force posed by the nature of the offense? Those are two very different questions. Although, I would agree with you that subsection B sweeps more broadly. Maybe that is. Maybe that's right. Yeah. Think about it. Thank you. I'd like to address the government's use of Najauen and Hayes. In Najauen and Hayes, this Court did identify a statute that is a hybrid statute that involves both a categorical inquiry as well as a fact-based inquiry. But what was present there is a clear indication from Congress that we were to look at fact-specific conduct using the language in which or using the language committed by. And it's important to note that one of the reasons this Court ruled the way it did in Najauen is because the provision right above it clearly called for a conduct-based approach, and it had identical structure. If we were to apply that same reasoning to this case, it would require a categorical approach because drug trafficking crime is categorical, conceded by the government. The elements clause is categorical, effectively conceded by the government. And why would Congress intend to treat subsection B any differently without clear intent based on the language it chose? Two other provisions that are also categorical in nature that apply to present offenses that are cited by the government, Section 929 and Section 931, one dealing with body armor in connection with a crime of violence, one dealing with the use of armor-piercing bullets. If the government is correct here today, those would be treated differently than 924C use of a gun. And I think that really calls into question the internal coherence of the body of law. I think this Court does have some obligation to seek a harmonious interpretation of the body of law. And many of the points raised by the government today would destroy not only the internal coherence of 924C, but also its external coherence with the way this Court has interpreted Section 16. And so it's for these reasons that we ask this Court to affirm the judgment of the 924C residual clause void for vagueness. Thank you very much. Roberts. Thank you, counsel. Mr. Fagan, you have four minutes remaining. Fagan. Thank you, Mr. Chief Justice. I just have, I think, four points. One is I think my friend agreed in a number of points that our burden is simply to show that this is a plausible interpretation of the statute. Second, I think it's helpful in that respect to think about whether this particular self-contained provision, if it were to have come before the Court as the first time anyone was ever urging a categorical approach, and a criminal defendant were coming before this Court and saying, no, you should apply the rule of lenity for me because I want a circumstance-specific approach. I understand that an ordinary defendant who commits commercial sex trafficking with a minor does so by threatening the minor with force, but that's not the way my  And I were arguing the other side. I were arguing for the government that that didn't matter. It just matters what an ordinary defendant does. You have no right to show the jury what you did. I don't think anyone would think that that was a slam-dunk case for the government that the Court should apply an ordinary case categorical approach. Third, I think that shows why the rule of lenity shouldn't have any application here, because it cuts both directions. A defendant who committed his actual crime in a manner that is non-violent would invoke the rule of lenity in favor of the very circumstance-specific approach we are urging. There is no reason to apply the rule of lenity to favor defendants who commit a string of sex trafficking. Sotomayor, the reason that you seem to be touting this reading is that it's going to expand, has to be, over the categorical approach, the number of defendants that this statute now will apply to. Otherwise, you wouldn't be fighting so hard. If it was really a draw, and your brief sort of walks this line in saying there's no empirical evidence to support how large the difference is. But logically speaking, the use of a gun in the vast majority of cases, I spot you that there's a few where this wouldn't happen, is itself always going to provide a substantial risk of violence. So I'm not buying that there isn't lenity, because for a very large number of people under your reading, they're going to have this statute now applied to them. If we accept your reading. Let me answer that in two ways, then I think my rebuttal will be complete at that point. The first thing I would say is I don't think this will dramatically expand the scope of crimes. There are going to be very few crimes that we would think about as ordinarily nonviolent that are going to become nonviolent just because there's a gun. And let me give you a specific example of a set of crimes that are now 924C crimes that are going to at the very least be jury questions under our approach, which are these Stash House sting cases that have come up in some of the amicus briefs, where a defendant enters into a conspiracy with an undercover agent to rob a drug stash house that doesn't really exist. Those cases obviously get to the jury because the defendant can claim that the situation was so under control that there was actually no risk that there would be a use of force, and we might lose a lot of those cases. And in some cases, judges might prevent those from coming to the jury. But the other thing I'd say is, and this was going to be my fourth point, we're not urging this approach because we want to broaden section 924C. It's going to, of course, limit it to only a subset of Hobbs Act conspiracies. We're urging this because we want the statute to remain constitutional and implement Congress's intent, and because there are a lot of offenses that we're going to lose. Kidnapping, conspiracies to commit murder, rape, these are the kinds of things that Congress would certainly have wanted to categorize as crimes of violence. And there are a number of other offenses that are going to be called into question because it's not clear we're going to be able to get them in under section 924C3A, which is going to spawn a whole new cottage industry of litigation on this issue. I'm not making up these examples. They include assault, manslaughter, material support of terrorism for defendants who've gone and trained at terrorist training camps. Sotomayor, with all of those cases, nothing about our ruling will affect the discretion of district court judges if they choose to give the same sentence, and even more, because once a defendant opens up a sentence, a judge has the discretion to go up, down, or stay the same. May I answer your question, Chief Justice? Your Honor, it's not always going to be possible to impose the same sentence. And Congress clearly made the judgment that it wanted additional sentences for people who use firearms, for example, in furtherance of civil rights crimes that cause physical injury. This issue has come up, for example, in the Dillon Roof prosecution in Charleston. This is we – I don't think it's correct to say that all these defendants are going to get the same sentences no matter what. Thank you. Thank you, counsel. The case is submitted.